**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DENNIS MURPHY, as Personal
Representative of the Wrongful Death Estate
of ANTONIO GURULE JACOBS,

    Plaintiff,

vs.                                                 No.: 21-CV-822-MV-SCY

ESPERANZA SAIZ, in her individual capacity,
MICHELLE HERRERA, in her individual capacity,
and KIMBERLY CHAVEZ-BUIE, in her individual capacity.

    Defendants.

## **DEFENDANTS' MOTION TO DISMISS**

COME NOW Defendants Esperanza Saiz, in her individual capacity, Michelle Herrera, in her individual capacity, and Kimberly Chavez-Buie, in her individual capacity, by and through their counsel of record, Jennings Haug Keleher McLeod LLP (Sean Olivas and Chris R. Marquez), and, pursuant to FED.R.CIV.P. 12(c), move the Court to dismiss Plaintiff's Complaint for Federal Civil Rights Violations [Doc. 1] ("Complaint"). As grounds for this Motion, Defendants state the following:

### INTRODUCTION

Plaintiff brings a § 1983 claim against Defendants, asserting that they are responsible for the death of Antonio Gurule Jacobs ("Child"), who, as Plaintiff alleges, was murdered at the hands of Jeffrey Moody, a friend of the Child's mother, Barbara Gurule, while the Child was in the legal custody of the New Mexico Children, Youth, and Families Department ("CYFD"). However, Defendants are entitled to qualified immunity. First, the Complaint fails to state a cognizable §

1983 special relationship claim under the facts alleged. Specifically, Moody's actions preclude any causal connection between the alleged conduct of Defendants and the Child's death. Further, the alleged conduct of Defendants does not meet the high standard necessary to "shock the conscience" of the federal judiciary. Finally, even if Plaintiff could establish a constitutional violation, the law was not clearly established that Defendants could be held liable under the circumstances of this case. Accordingly, Defendants are entitled to qualified immunity, and the Court should dismiss the Complaint.

## ARGUMENT

A Rule 12(c) motion is governed by the same standards as a motion to dismiss under FED. R. CIV. P. 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). In reviewing a Rule 12(b)(6) motion to dismiss, "a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010). "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544). The factual allegations must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955—i.e., "that discovery will

reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Qualified immunity also shields officials who have "reasonable, but mistaken beliefs," and operates to protect officials from the sometimes "hazy border[s]" of the law. *Saucier v. Katz*, 533 U.S. 194, 205, 121 S. Ct. 2151 (2001). When a defendant asserts qualified immunity, a plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). As discussed below, the Complaint fails to satisfy either prong of the qualified immunity analysis.

## A. The Complaint Fails to Allege a Cognizable Violation of a Constitutional Right.

The Due Process Clause of the Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. A state actor may be held liable under § 1983 only for his or her own affirmative acts that violate a plaintiff's due process rights, and is generally not liable for the acts of third parties. *Robbins v. Oklahoma*, 519 F.3d at 1251 (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S. Ct. 998 (1989)). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors." *Deshaney*, 489 U.S. 189, 195.

There are two exceptions to this general rule. The first, the special-relationship doctrine, "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003) (quoting *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998)). The second exception, the danger-creation theory, allows liability "only when 'a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence.'" *Robbins*, 519 F.3d at 1251 (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)). "If either the special-relationship or danger-creation exception applies, the conduct of the state actor must go beyond negligence to the point of 'shocking the conscience.'" *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1135 (D.N.M. 2012) (Browning, J.); *see also Johnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1142 (10th Cir. 2006) ("The shocks the conscience standard applies to both types of suits.")).

Plaintiff does not assert a claim under the danger-creation theory, nor could he under the facts of this case where the Child was removed from the custody of his mother and subsequently returned to her care through reunification efforts. [Doc. 1, ¶¶ 38, 41, 76-77, 127]; *see also Armijo v. Wagon Mound Pub. Schs*, 159 F.3d 1253, 1263 (10th Cir. 1998) ("[I]f the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed."). As demonstrated below, Plaintiff fails to allege a cognizable § 1983 claim under the special relationship doctrine.

1. **Special Relationship Doctrine**

Plaintiff asserts a claim under the special relationship doctrine. [Doc. 1, p. 36, Count I]. The Tenth Circuit has set forth the elements of such a claim as follows:

> First, the plaintiff must demonstrate the existence of a special relationship, meaning that the plaintiff completely depended on the state to satisfy basic human needs…. Second, the plaintiff must show that the defendant knew that the plaintiff was in danger or failed to exercise professional judgment regarding that danger…. Third, the plaintiff must show that the defendant's conduct caused the plaintiff's injuries…. And finally, fourth, the defendant's actions must shock the conscience….

*Dahn v. Amedei*, 867 F.3d 1178, 1185-86 (10th Cir. 2017) (internal citations omitted). With respect to the first element, Defendants do not dispute, for purposes of establishing the first prong of the qualified immunity analysis, the possible existence of a special relationship with the Child. As to the second element, Plaintiff does not allege that Defendants knew that the Child was in danger of being murdered by Moody. [*See generally*, Doc. 1]. While Defendants deny that they failed to exercise professional judgment regarding such danger, this Motion does not address whether the Complaint plausibly alleges such failure. Rather, as discussed below, the Complaint fails to establish the third and fourth elements of a special relationship claim.

a. **Plaintiff cannot establish causation.**

Section 1983 defendants "may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability." *Valdez v. Roybal*, 186 F. Supp. 3d 1197, 1226 (D.N.M. 2016) (Browning, J.); *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) ("The requisite causal connection is satisfied if [the defendants] set in motion a series of events that [the defendants] knew or reasonably should have known would cause others to deprive

5

[the plaintiffs] of [their] constitutional rights.") (quoting *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006)). "In civil rights cases, a superseding cause, as we traditionally understand it in tort law, relieves a defendant of liability." *Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006) (internal citation omitted).

Plaintiff's § 1983 claim is undoubtedly based upon the death of the Child. The Complaint alleges that, "[a]s a direct and proximate result of the acts of Defendants Saiz, Herrera, and Chavez-Buie…, Antonio suffered fatal physical injuries and also suffered pain, emotional distress, and severe mental anguish in connection with the deprivation of his constitutional rights." [Doc. 1, Compl., ¶ 280]. It is further alleged that "[t]he cause of Antonio's death was 'blunt head trauma'" and that "[t]he manner of death was ruled 'homicide.'" (*Id.* ¶ 218). The Complaint alleges that the Child was "murdered" by Moody. (*Id.* ¶¶ 1, 3, 227). The Complaint further alleges that Defendants "engaged in a series of actions and judgments that resulted in the improper and unsafe placement of Antonio with Barbara Gurule." (*Id.* ¶ 248). According to Plaintiff, "[b]ut for the actions and conduct of Defendants Saiz, Herrera, and Chavez-Buie described above, Antonio would not have been placed and allowed to continue to reside in the known dangerous environment of Barbara Gurule." (*Id.*).

The Complaint fails to allege a plausible causal connection between Defendants' alleged actions and Moody's murder of the Child. Plaintiff does not allege that Moody's actions were foreseeable to Defendants. [*See generally*, Doc. 1]. The Complaint contains only scant allegations regarding Defendant Saiz' knowledge regarding Moody.[1] (*Id.*). For example, Plaintiff alleges that

---

[1] Notably, the Complaint does not contain any allegation that either Defendant Herrera or Defendant Chavez-Buie had any knowledge at all regarding Moody, a fatal flaw as it relates to those Defendants. (*See generally, id.*); *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (emphasis added) (To establish supervisory liability, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued

6

"Defendant Saiz knew Jeffrey Moody had a criminal history and also abused drugs, including methamphetamines." (*Id.* ¶ 73).[2] Plaintiff further alleges that Gurule provided Moody's name to Defendant Saiz as a family support and emergency contact on July 5, 2018. (*Id.* ¶ 164). Plaintiff alleges that, "[o]n July 11, 2018, Defendant Saiz conducted a home visit in which Moody was present in the home with Barbara Gurule and Antonio." (*Id.* ¶ 167). Plaintiff alleges that, on July 19 or 20, 2018, Saiz conducted another home visit in which Moody was present, but Gurule was not, and that Saiz was concerned about the Child being left along with Moody because she was not aware he would be serving as a caregiver. (*Id.* ¶¶ 171-173. 175-176). Plaintiff alleges that Defendants failed to investigate whether Moody could meet the Child's needs or Moody's fitness to provide care. (*Id.* ¶¶ 177-179). Other than Moody being present at the home (apparently alone) during an August 30, 2018 visit, (*id.* ¶ 205), the Complaint contains no further allegations establishing Defendants' knowledge regarding Moody prior to the incident in question. (*See generally*, *id.*). The Complaint is simply devoid of any allegations suggesting that Moody's actions were objectively foreseeable to Defendants. (*Id.*). Accordingly, Plaintiff cannot establish causation because Moody's murder of the Child is a superseding cause for which Defendants

---

operation of a policy that (2) caused the complained of constitutional harm, and (3) <u>acted with the state of mind required to establish the alleged constitutional deprivation</u>.").

[2] The Complaint alleges that Moody had previously been indicted for aggravated battery and child abuse. (*Id.* ¶ 144). Prior to the death of the Child, however, Moody had never been convicted of any felony or violent crime. (Docket, attached hereto as **Exhibit A**); *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (ruling that a district court could take judicial notice of "state court documents"); *Demente v. GEICO Gen. Ins. Co.*, 2018 U.S. Dist. LEIS 25072, at *49 (D.N.M. Feb. 15, 2018) (Browning J.) (same); *Inge v. McClelland*, 257 F. Supp. 3d 1158, 1161 (D.N.M. 2017) (Parker, J.) (ruling that, in considering a motion to dismiss, "[t]he court may also consider documents of which the court may take judicial notice."). Moody's single prior felony charge stemmed from a domestic dispute with an adult in which a child was in proximity. (Grand Jury Indictment, filed in D-1314-CR-2010-00189 and attached hereto as **Exhibit B**). Nothing in the 2010 indictment suggests intent to harm, or actual harm to, a child. (*Id.*, Count III). The charge was dismissed for lack of prosecution. (Disposition Order for Lack of Prosecution, filed in D-1314-CR-2010-00189 and attached hereto as **Exhibit C**).

cannot be liable. *Martinez*, 697 F.3d 1252, 1255; *Franco*, 446 F.3d 1036, 1046; *Roybal*, 186 F. Supp. 3d 1197, 1226.

### b. Defendants' alleged conduct does not shock the conscience.

To establish a substantive due process violation, the alleged conduct must shock the conscience. This standard is an exceedingly high bar to overcome. "It is well settled that negligence is not sufficient to shock the conscience." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006). "Even knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." *Deanzona v. City & Cty. of Denver*, 222 F.3d 1229, 1235 (10th Cir. 2000). "[A] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). "That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.*

> Establishing these limits advances "three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety."

*Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006) (quoting *Uhlrig* at 573).

The Tenth Circuit recently considered a case under facts similar to those alleged in the present case, including the death of a child. In *Hubbard v. Okla. ex rel. Okla. Dep't of Human Servs.*, 759 Fed. Appx. 693, 696 (10th Cir. 2018) (unpub.),[3] the plaintiff sued numerous employees of the Oklahoma Department of Human Services ("DHS") on behalf of two children and the estate

---

[3] *Hubbard* is an unpublished decision. "Unpublished decisions are not precedential, but may be cited for their persuasive value." Ct. App. 10th Cir., Cir R 32.1(A); *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) (citation omitted) ("[I]f an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow citation to that decision.").

of a deceased child, A.P., under Section 1983 and state tort law. The plaintiff alleged that DHS had received nine (9) referrals regarding abuse and neglect of the children by their biological parents. *Id.*

> These referrals included the following allegations: (1) the presence of a convicted sex offender in the home, substance abuse, and apparent mental health issues with the parents; (2) lack of supervision and a convicted sex offender still in the home; (3) open drug use in the home; (4) unattended children while a fire burned in the backyard and firefighters later noting a 'horribly dirty' and unsafe home; (5) failure to provide A.P. with food or clothing and failure to visit A.P. in the hospital when he was suffering respiratory problems (he had been taken there by a babysitter); and (6) a 'filthy beyond filthy' home, with the children unattended and the parents using methamphetamine.

*Id.* At one point, "the biological father admitted to DHS to having schizophrenia and using marijuana" and "[t]he maternal grandmother, who resided in the home, admitted to DHS a history of smoking crack cocaine and stated that her own children had previously been taken away from her due to drug abuse and failure to protect them from sexual abuse." *Id.* The father "also admitted that he had hit his wife" and the "mother admitted to using marijuana." *Id.*

After officers were called to the residence, "they noted that the house was stacked with garbage, had no running water, and that the bathroom was full of feces." *Id.* "The police determined that the biological parents' home was unsuitable for the children and directed that they be removed." "They made this determination just weeks after a DHS employee had visited the home and determined it was suitable." *Id.*

As a result of the above, a court "adjudicated the children to be deprived." *Id.* However, "before the unsuitable home conditions were corrected, DHS employees recommended a trial reunification." *Id.* Because the parents "continued to keep an unsafe home, … the trial reunification was unsuccessful."

DHS then placed the children with foster parents. *Id.* The foster parents later advised DHS that one of the children was sexually assaulting another. *Id.* DHS arranged therapy for the children, but the foster parents "often failed to take the children to their scheduled session, missing at least six appointments." *Id.* A DHS supervisor noted that her subordinate's "lack of effort on the case was 'heinous & shocking' and that 'we cannot allow one more week to go by without therapeutic intervention.'" *Id.* at 697.

DHS continued to receive additional referrals regarding the children. *Id.* In investigating the home, a DHS employee "detected 'a strong odor of Marijuana' at the home and noticed that [the foster mother] had bloodshot eyes." *Id.* One of the children reported being spanked, made to sleep on the floor, and that the foster parents had "smoked something in the home," and that he had molested his sister. *Id.* DHS employees expressed concerns about the household, and at least one employee stated that he was working on removing the children therefrom. *Id.*

Several months later, one of the children was removed from the home and placed into a different foster program. *Id.* That program received a report that the foster mother had "scalded and injured A.P. by placing him in a hot bath, and that she blamed these injuries on [another child]." *Id.* DHS did not open a referral based upon this report. *Id.* The foster parents continued to miss therapy appointments for the molested child. *Id.*

Months later, DHS received a referral reporting that A.P. was in the hospital. "He had sustained a C-1 vertebral fracture and an occipital skull fracture, which resulted in his death on August 31, 2014." *Id.* at 698. The foster mother "was charged in state court with felony child abuse murder." *Id.*

Under the facts alleged, the district court "held that, at most, the [plaintiffs]' allegations may have shown negligence but not the 'more exacting constitutional standard' of 'shock the conscience.'" *Id.* at 703. On appeal, the Tenth Circuit described some of the employees' conduct as "troubling" and noted that it showed "negligence in [their] handling the children's case." *Id.* at 711. However, the Court agreed with the district court that the conduct did not rise to the level of conscience-shocking behavior, noting that, "[u]nder our precedent, '[e]ven knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking.'" *Id.* (quoting *DeAnzona*, 222 F.3d at 1235). With respect to the death of A.P., the Court noted that DHS employees were not aware of physical abuse of the children and, thus, the information available to them "would not have put [them] on notice of the risk of violence culminating in A.P.'s death many months later." *Id.*

In the present case, the vast majority of the allegations in the Complaint relate, not to the asserted danger itself (Moody's murder of the Child), but rather to Gurule's drug use and Defendants' alleged failure to address such use and Gurule's parenting deficiencies. Critically, however, the Complaint does not contain a single allegation of physical abuse to, or the risk of physical abuse to, the Child that would have placed Defendants on notice of Moody's later actions. [*See generally*, Doc. 1]. Rather, Plaintiff alleges that the Child was removed from Gurule's custody "as a result of neglect," as opposed to physical abuse. (*Id.* ¶¶ 38, 43). The balance of the allegations discuss only generalized risks allegedly resulting from Gurule's drug use, risks that are vague and not related to the actual asserted risk, the murder by Moody. (*Id.* ¶¶ 48, 53, 99, 118, 158). Again, the Complaint does not contain any allegation that the Child was <u>actually</u> abused at

11

any time prior the incident in question, much less that Defendants were aware of any such abuse.[4] (*See generally*, *id.*).

Like the plaintiff in *Hubbard*, Plaintiff asserts allegations that could plausibly support a negligence claim against Defendants.[5] As in *Hubbard*, however, there is no contention that Defendants were aware of any physical abuse of the Child and, thus, the information available to them "would not have put [them] on notice of the risk of violence culminating in [the Child]'s death[.]" *Hubbard*, 759 Fed. Appx. 693, 711. Negligence, or even intentional or reckless conduct is not enough to shock the conscience. *Moore*, 438 F.3d 1036, 1040; *Deanzona*, 222 F.3d 1229, 1235; *Uhlrig*, 64 F.3d 567, 574. While the circumstances of this case are undoubtedly tragic, Plaintiff has failed to "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d 567, 574; *Hubbard*, 759 Fed. Appx. 693, 711.

Because the Complaint fails to establish either causation of conscience-shocking behavior, it fails to state a cognizable § 1983 claim under the special relationship doctrine. *Amedei*, 867 F.3d 1178, 1185-86 (10th Cir. 2017).

**B. The Complaint Fails to Allege a Violation of Clearly Established Law.**

Even if the Court were to find that Plaintiff has pled a cognizable due process violation, Plaintiff's claim must be dismissed under the second prong of the qualified immunity analysis. Qualified immunity protects government officials from liability for civil damages if their conduct

---

[4] The absence of such allegations is particularly germane to Plaintiff's claim against Defendants Herrera and Chavez-Buie where he does not allege *any* knowledge or awareness of Moody at all, let alone the risk that Moody would murder the Child. *Dodds*, 614 F.3d 1185, 1199.

[5] Indeed, prior to bringing the present action, Plaintiff sued CYFD for negligence under the same facts in First Judicial District Court Cause No. D-101-CV-2019-00642.

"does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. 7, 12 (quoting *Malley v Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)). A clearly-established right exists if "existing precedent . . . place[s] the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. 7, 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074 (2011)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742). However, the "clearly established" analysis is not limited to the conduct itself. Courts have found that "the relevant inquiry as to whether a right is clearly established to include whether a reasonable state actor would have had notice that her conduct violated [the plaintiff]'s constitutional right, <u>and</u> that she could be held liable for her conduct under § 1983…. i.e., whether it was clear that [the d]efendant could be held liable for her actions under § 1983 as a state actor." *Faulkner v. New Mexico*, 2016 U.S. Dist. LEXIS 204920, at *30 (D.N.M. Mar. 7, 2016) (Garza, J.) (citing *Johnson v. Martin*, 195 F.3d 1208 (10th Cir. 1999) (emphasis added). A plaintiff is not required to supply a case directly on point from the Tenth Circuit or the Supreme Court, but must do more than cite case law announcing a legal rule "at a high level of generality." *White*, 137 S. Ct. at 552 (quoting *Al-Kidd*, 563 U.S. at 742). The relevant case law "must be 'particularized' to the facts of the case" at hand. *Id.* at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987)).

Defendants are not aware of any case law in the Tenth Circuit or any jurisdiction holding that a government actor may be held liable for the unforeseeable actions of a third person in murdering a child that was in the legal custody of the state during a trial home visit with the biological mother, particularly in the absence of prior physical abuse or other circumstances which would place the government on notice of the risk of the asserted harm. As discussed above, the Tenth Circuit held just the opposite in *Hubbard*. 759 Fed. Appx. 693, 711. While Tenth Circuit law has recognized that "the constitutional right of foster children to be kept reasonably safe from harm has been clearly established [,]" *J.W. v. Utah*, 647 F.3d 1006, 1011 (10th Cir. 2011) (citing *Yvonne L. v. N.M. Dep't of Human Servs.*, 959 F.2d 883, 892-93 (10th Cir. 1992), such broad language is directly contrary to the Supreme Court's recent admonition against defining law at such "a high level of generality." *White*, 137 S. Ct. at 552; *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) ("This Court has repeatedly told courts . . . not to define clearly established law at a high level of generality.")). Under Supreme Court precedent, the law was not clearly established that Defendants could be held liable for Moody's actions in murdering the Child under the facts alleged in the Complaint.

## CONCLUSION

For the reasons discussed above, Defendants respectfully request the Court dismiss the Complaint and grant such further relief as the Court deems appropriate.

Respectfully submitted,

JENNINGS HAUG KELEHER McLEOD LLP

By: */s/ Chris R. Marquez*
Sean Olivas
Chris R. Marquez
P.O. Box AA
Albuquerque, NM  87103

14

> Tel: (505) 346-4646
> Fax: (505) 346-1370
> so@jhkmlaw.com
> cm@jhkmlaw.com
> *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was filed, via the Court's electronic filing system, and thus served to all parties of record on this 21st day of March, 2022.

*/s/ Chris R. Marquez*
Chris R. Marquez

NM03594.427/5094705.DOCX

# Search

**Record Count:** 13
**Search By:** Party   **Party Search Mode:** Name   **Last Name:** moody   **First Name:** jeffrey   **All** All   **Date Filed On or After:** 10/24/1991   **Sort By:** Filed Date

| Case Number | Citation Number | Style/Defendant Info | Filed/Location/Judicial Officer | Type/Status | Charge |
|---|---|---|---|---|---|
| M-60-MR-2010-00167 | | MOODY, JEFFREY 10/24/1991 | 03/05/2010 Hawkes, Danny H. | Misdemeanor (Mag) File Destroyed | LARCENY |
| M-60-FR-2010-00165 | | MOODY, JEFFREY D 10/24/1991 | 05/25/2010 Hawkes, Danny H. | Felony Final Closed | Aggravated battery (misdem (household member Battery (household member ABUSE OF A CHILD (1ST OFFENS |
| D-1314-CR-2010-00189 | | MOODY, JEFFREY 10/24/1991 | 06/17/2010 Sanchez, William A. | Felony Crimes Against Persons Final Closed | ASSAULT BATTERY AGAINST A HOUSE MEMBER ABANDO CHILD |
| M-59-TR-2011-01936 | C-1411410695898 C-1411410695906 C-1411410695914 C-1411410695922 | MOODY, JEFFREY, II 10/24/1991 | 06/24/2011 Sanchez, John W. | Traffic File Destroyed | No driver's license Evidence of registrat Careless driving (careles inattenti or imprude No insurance |
| M-52-TR-2011-01874 | C-002512501156090 C-002512501156108 C-002512501156116 | MOODY, JEFFERY, II 10/24/1991 | 11/02/2011 Socorro Magistrate Naranjo, Jim | Traffic File Destroyed | No insurance No driver's license VEHICLE SUBJECT TO REGIST EXCEPT |
| M-59-CV-2012-00396 | | RENT A CENTER, Plaintiff(s) v. Jeffrey D Moody, Defendant(s) | 09/20/2012 Garcia, Tina R. | General Civil Final Closed | |
| D-1314-DM-2014-00145 | | Jeffrey Moody v. Sandra Marie Moody | 03/28/2014 Smith, Allen R. | Dissolution With Custody Final Closed | |
| D-1314-CV-2015-00208 | | Lobel Financial Corp. v. Jeffrey Moody | 02/18/2015 Mercer, Cindy M. | Contract/Debt & Money Due Final Closed | |
| M-60-MR-2016-00147 | | Moody, Jeffrey D 10/24/1991 | 03/02/2016 Chavez, John R. | Misdemeanor (Mag) File Destroyed | Possess of Marijuan or Syntheti Cannab (One Ounce or Less) |

# Exhibit A

| Case Number | ID | Party | DOB / Judge | Filed Date | Case Type / Status | Charge |
|---|---|---|---|---|---|---|
| | | | | | | (1st Offense) Failure to Appear on Misdemeanor Charge |
| M-56-MR-2017-00162 | 2227410120806 | Moody, Jeffrey D | 10/24/1991 | 07/14/2017 White, Heath E. | Misdemeanor (Mag) Final Closed | Driving While License Suspended |
| M-59-FR-2018-00470 | | Moody, Jeffrey D | 10/24/1991 | 09/04/2018 Sanchez, John W. | Felony Final Closed | Reckless Abuse of a Child (Results in Death) |
| D-1314-LR-2018-00019 | | Moody, Jeffrey | 10/24/1991 | 09/11/2018 Mercer, Cindy M. | Petition for Review of Bond/Conditions of Release Final Closed | Pretrial Preventive Detention NMRA 5-409 |
| D-1314-CR-2018-00289 | | MOODY, JEFFREY | 10/24/1991 | 09/20/2018 Mercer, Cindy M. | Felony Crimes Against Persons Final Closed | First Degree Murder (Willful & Deliberate) Reckless Abuse of a Child (Results in Death) Tampering with Evidence (Highest Crime a Capital, First or Second Degree Felony) |

STATE OF NEW MEXICO
COUNTY OF VALENCIA
THIRTEENTH JUDICIAL DISTRICT

FILED IN MY OFFICE
DISTRICT COURT CLERK

2010 JUN 17 PM 3: 21

GERI LYNN SANCHEZ
BY _____AJ_____ DEPUTY

STATE OF NEW MEXICO,
        Plaintiff,

vs.

NO:  D1314 CR 2010 - 189
DA# VL 10 1020

JEFFREY MOODY,
DOB: 10/24/1991
SSN:
STN: 320100100129
        Defendant.

JUDGE WILLIAM A. SANCHEZ, DIV. III

## GRAND JURY INDICTMENT

THE GRAND JURY CHARGES:

Count 1: **Aggravated Battery Against a Household Member (Deadly Weapon)**, on or about May 14, 2010, in Valencia County, New Mexico, the above-named defendant did touch or apply force to Misty Thomas, a household member of the defendant, with a knife, a deadly weapon, and the defendant intended to injure her/him or another, a third degree felony, contrary to Section 30-03-16(C), NMSA 1978.

Count 2: **Battery Against a Household Member**, on or about May 14, 2010, in Valencia County, New Mexico, the above-named defendant did unlawfully touch or apply force to Sandra Moody, a household member of the defendant, in a rude, insolent or angry manner, a misdemeanor, contrary to Section 30-03-15, NMSA 1978.

Count 3: **Child Abuse - Intentional (No Death or Great Bodily Harm)**, on or about May 14, 2010, in Valencia County, New Mexico, the above-named defendant did intentionally and without justification, cause OT, a child under the age of eighteen years, to be placed in a situation that may endanger her life or health, to wit: throwing a knife at Misty Thomas while while OT was in close proximity to Misty Thomas, a third degree felony, contrary to Section 30-6-1(D), NMSA 1978.

**Exhibit B**

The names of the witnesses upon whose testimony this Information is based are as follows: Misty Thomas, Sondra Moody, Stephen Hall.

I hereby certify that the foregoing INDICTMENT is a _True_ BILL.

_____
Foreman

_____6/17/10_____
Date

APPROVED BY:

_____
Anna S. Ehresmann
Assistant District Attorney

Name:              Jeffrey Moody
Address:           324 Dalies , Belen, NM  87002
DOB:               10/24/1991
POB:
SSN:
FBI No.:
Marks/Tattoos:     ,
Aliases:
Booking Slip No.:  Complaint was not filled at opening!!!
State Tracking No.: 320100100129
Magistrate Court No.: M-60-FR-201000165

**STATE OF NEW MEXICO**
**VALENCIA COUNTY**
**THIRTEENTH JUDICIAL DISTRICT COURT**

FILED IN MY OFFICE
DISTRICT COURT CLERK

2014 MAR 26 PM 2:29

PHILLIP ROMERO

**STATE OF NEW MEXICO VS. JEFFREY MOODY**          BY _____ DEPUTY No. D-1314-CR-2010-00189

## DISPOSITION ORDER FOR LACK OF PROSECUTION

THIS MATTER having come before the Court on its own motion, it appearing that no significant action has been taken in 180 or more days in connection with any and all pending claims,

IT IS THEREFORE ORDERED that all pending claims are dismissed without prejudice. Within thirty (30) days after service of this order, any party may move for reinstatement. If other parties have filed an appearance, movant shall comply with Rule 1-007.1 NMRA. Failure to comply with these requirements will result in the denial of the motion without hearing.

IT IS FURTHER ORDERED that all writs, judgments, final orders, or stipulations previously filed herein shall remain in full force and effect unless otherwise ordered.

_____
THE HONORABLE WILLIAM A. SANCHEZ
DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, the undersigned Employee of the District Court of Valencia County, New Mexico, do hereby certify that I served a copy of this document to all parties listed below on _____MAR 31 2014_____.

DA'S                                                          COURT'S INBOX

JEFFREY D MOODY II                              07 VIOLETA PL
                                                              LOS LUNAS NM 87031

                                                By: _____

**Exhibit C**